WILLIAM LAWSON BROWN, III, Plaintiff v. MARK P. ELLIS, Defendant

No. COA06-710-2

(Filed 3 August 2010)

**1. Jurisdiction— minimum contacts—alienation of affections—telephone calls and email from California**

A North Carolina plaintiff alleged sufficient facts to satisfy minimum contacts in an alienation of affections case against a California defendant where he alleged that defendant initiated almost daily contacts with plaintiff's wife, these contacts involved defendant's pursuit of a sexual and romantic relationship with plaintiff's wife, the contacts directly related to plaintiff's cause of action, and California does not have this cause of action.

**2. Appeal and Error— notice of appeal—sufficiently clear**

Although defendant's notice of appeal could have been worded more artfully, it was sufficiently clear to notice appeal from both a judgment at which defendant was neither present nor

represented by counsel and a subsequent order denying defendant's motion for a new trial.

**3. Process and Service— due process—insufficient notice**

The trial court erred by denying a new trial for a California defendant in an alienation of affections case where several notices were sent to the wrong address, including an order allowing his attorney to withdraw and an order setting the trial date. The notice defendant finally received on the Friday before the Monday trial date was entirely inadequate.

Upon remand from the Supreme Court of North Carolina for further review of an appeal by defendant from judgment entered on or about 2 February 2005 by Judge Melzer A. Morgan Jr. in Superior Court, Guilford County and order entered 13 December 2005 by Judge W. Douglas Albright in Superior Court, Guilford County.

*Nix & Cecil, by Lee M. Cecil, for plaintiff-appellee.*

*Forman Rossabi Black, P.A., by T. Keith Black and William F. Patterson, Jr., for defendant-appellant.*

STROUD, Judge.

Plaintiff William Brown sued defendant Mark Ellis for alienation of affections and criminal conversation alleging that defendant, a California resident, had a romantic and sexual relationship with Mrs. Brown. After a trial at which defendant was neither present nor represented by counsel, judgment was entered against him for $600,000.00. When this case was first before us, we vacated the trial court's judgment, holding that the trial court did not have jurisdiction over defendant under N.C. Gen. Stat. § 1-75.4, the long-arm statute. Brown filed a petition for discretionary review, which the Supreme Court allowed. The Supreme Court reversed this Court's opinion, holding that North Carolina has jurisdiction over defendant pursuant to N.C. Gen. Stat. § 1-75.4, and remanded for our consideration of defendant's remaining issues. On remand, we reverse the trial court's order denying defendant's motion for new trial because defendant did not have adequate notice of trial.

## I. Background

The Supreme Court summarized the factual background of plaintiff's complaint and claims as follows:

**BROWN v. ELLIS**

[206 N.C. App. 93 (2010)]

Plaintiff filed his verified complaint in Superior Court, Guilford County, alleging causes of action against defendant for alienation of affections and criminal conversation. In his complaint, plaintiff alleged he resided in Guilford County, North Carolina, with his wife and daughter, and that defendant resided in Orange County, California. According to the complaint, plaintiff's wife and defendant were both employed by the same parent company and worked together on numerous occasions. Plaintiff alleged defendant willfully alienated the affections of plaintiff's wife by, among other actions, initiating frequent and inappropriate, and unnecessary telephone and e-mail conversations with plaintiff's wife on an almost daily basis. The telephone conversations between defendant and plaintiff's wife often occurred in the presence of plaintiff and his minor child and involved discussions of defendant's sexual and romantic relationship with plaintiff's spouse. Plaintiff alleged that through numerous telephone calls and e-mails to plaintiff's spouse, defendant has arranged to meet, and has met with plaintiff's spouse on numerous occasions outside the State of North Carolina, under the pretense of business-related travel.

The complaint further alleged that plaintiff's wife and defendant committed adultery during these business trips, which further alienated and destroyed the marital relationship between plaintiff and his wife. In support of his complaint, plaintiff submitted an affidavit alleging that the majority of defendant's conduct which constitutes an alienation of affections occurred within the jurisdiction of North Carolina and that evidence as to the frequent electronic and telephonic contact between defendant and plaintiff's spouse can be established through records and witnesses located in the State of North Carolina.

*Brown v. Ellis*, 363 N.C. 360, 361-62, 678 S.E.2d 222, 222-23 (2009) (quotation marks and brackets omitted). The Supreme Court reviewed this Court's holding that the State of North Carolina did not have personal jurisdiction over defendant pursuant to N.C. Gen. Stat. § 1-75.4. *Id.*, 363 N.C. 360, 678 S.E.2d 222. On 18 June 2009, the Supreme Court by a *per curiam* opinion reversed and remanded the Court of Appeals decision, holding that "[w]e conclude plaintiff's complaint alleges sufficient facts to authorize the exercise of personal jurisdiction over defendant pursuant to N.C.G.S. § 1-75.4(4)(a)." *Id.*, 363 N.C. at 364, 678 S.E.2d at 224. Because we previously held that North Carolina did not have jurisdiction over defendant under

N.C. Gen. Stat. § 1-75.4, we did not address defendant's constitutional arguments that North Carolina's exercise of jurisdiction over him violates his due process rights and that he did not have adequate notice of his trial. As instructed by the Supreme Court, we will now consider defendant's remaining arguments.

## II. Minimum Contacts

[1]  Defendant contends that "plaintiff [f]ailed to [s]how [s]ufficient [c]ontacts between [d]efendant and North Carolina to [s]atisfy the [d]ue [p]rocess [r]equirements for [e]xercise of [*i*]*n personam* [j]urisdiction." Our inquiry regarding personal jurisdiction requires consideration of two questions. *Brown v. Meter*, —— N.C. App. ——, ——, 681 S.E.2d 382, 387 (2009), *disc. review denied and appeal dismissed*, 364 N.C. 128, —— S.E.2d —— (2010). The first question is whether North Carolina has jurisdiction under N.C. Gen. Stat. § 1-75.4, the long-arm statute. *Id.* Our Supreme Court has answered that question in the affirmative. *See Brown v. Ellis*, 363 N.C. at 364, 678 S.E.2d at 224. We must now address the second part of the inquiry, which is whether defendant has "minimum contacts" with the State of North Carolina sufficient to satisfy the requirements of due process. "Due process requires that the defendant have minimum contacts with the state in order to satisfy traditional notions of fair play and substantial justice." *Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 857 (2000) (citation and quotation marks omitted).

> When evaluating personal jurisdiction, the trial court must engage in a two-step inquiry: first, the trial court must determine whether a basis for jurisdiction exists under the North Carolina long-arm statute, and second, if so, the trial court must determine whether the assertion of personal jurisdiction over the defendant is consistent with applicable due process standards. When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry, which is whether defendant has the minimum contacts necessary to meet the requirements of due process. . . .

> . . . .

> [D]ue process considerations prohibit our state courts from exercising personal jurisdiction unless the defendant has had certain minimum contacts with the forum state such that traditional notions of fair play and substantial justice are not offended by maintenance of the suit.

*Id.*, —— N.C. App. at ——, 681 S.E.2d at 387-88 (citations, quotation marks, and brackets omitted). Prior cases have set forth factors for consideration as to whether a defendant has had sufficient minimum contacts with North Carolina to satisfy due process. *See, e.g., id.*, —— N.C. App. at ——, 681 S.E.2d at 388.

> Although a determination of whether the required minimum contacts are present necessarily hinges upon the facts of each case, there are several factors a trial court typically evaluates in determining whether the required level of contacts exists: (1) quantity of the contacts between the defendant and the forum state, (2) quality and nature of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest in the forum state, and (5) convenience of the parties.

*Id.* (citation and quotation marks omitted).

Our standard of review for this inquiry is *de novo. Id.*, —— N.C. App. at ——, 681 S.E.2d at 387.

> In examining the legal sufficiency of the trial court's order, our review on appeal focuses initially on whether the findings are supported by competent evidence in the record. If the findings of fact are supported by competent evidence, we conduct a *de novo* review of the trial court's conclusions of law and determine whether, given the facts found by the trial court, the exercise of personal jurisdiction would violate defendant's due process rights.

*Id.*, —— N.C. App. at ——, 681 S.E.2d at 387 (citations, quotation marks, and brackets omitted).

Although the trial court did not make any factual findings in its order denying defendant's motion to dismiss, our Supreme Court has set forth the facts as alleged by plaintiff in its opinion. *See Brown v. Ellis*, 363 N.C. 360, 678 S.E.2d 222. Defendant argues that "the allegations in the verified complaint are devoid of any facts going to the nexus between the alleged misconduct and this State, citing *Tompkins v. Tompkins*, 98 N.C. App. 299, 390 S.E.2d 766 (1990). In *Tompkins*, this Court concluded that North Carolina did not have personal jurisdiction over the defendant because

> the pleadings are devoid of any allegations that the parties resided here during a portion of the marriage or at the time of the separation. It is true that the failure to plead the particulars of personal jurisdiction is not necessarily fatal, so long as the facts

alleged permit the reasonable inference that jurisdiction may be acquired. However, plaintiff's allegations of defendant's marital misconduct, absent any allegations going to a nexus between such misconduct and this State, are simply insufficient to permit the reasonable inference that personal jurisdiction over defendant could properly be acquired in this case.

*Tompkins* at 304, 390 S.E.2d at 769 (citation omitted).

It is undisputed that defendant has never visited North Carolina. However, the Supreme Court has held that defendant's telephone calls and email messages to plaintiff's wife in North Carolina were sufficient contacts to satisfy the long-arm statute, stating that:

[p]laintiff alleged that he resided in Guilford County with his wife and daughter and that defendant initiated frequent and inappropriate, and unnecessary telephone and e-mail conversations with plaintiff's wife on an almost daily basis. According to the complaint, defendant and plaintiff's wife discussed their sexual and romantic relationship in the presence of plaintiff and his minor child. In his supporting affidavit, plaintiff specifically averred that defendant's alienation of his wife's affections occurred within the jurisdiction of North Carolina. Although the complaint does not specifically state that plaintiff's wife was physically located in North Carolina during the telephonic and e-mail communications, that fact is nevertheless apparent from the complaint.

*Brown v. Ellis*, 363 N.C. at 364, 678 S.E.2d at 224 (quotation marks and brackets omitted). Because plaintiff's complaint and affidavit, read together, averred that the "alienation of [plaintiff's] wife's affections occurred within the jurisdiction of North Carolina[,]" *id.*, the factual allegations "permit the reasonable inference that personal jurisdiction over defendant could properly be acquired in this case." *Tompkins* at 304, 390 S.E.2d at 769.

Defendant also argues that *Fox v. Gibson*, 176 N.C. App. 554, 626 S.E.2d 841 (2006) and *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000) can be distinguished from this case. In *Fox* and *Cooper*, this Court held that North Carolina could properly exercise personal jurisdiction over the defendant. *See Fox*, 176 N.C. App. 554, 626 S.E.2d 841, *Cooper*, 140 N.C. App. 729, 537 S.E.2d 854. In *Fox*, the plaintiff sued the defendant, a Georgia resident, for alienation of affections. *Fox* at 555-56, 626 S.E.2d at 842-43. In *Fox*, the plaintiff's

husband had filed an affidavit detailing the sexual relationship between himself and the defendant in North Carolina. *Id.* at 555, 626 S.E.2d at 843. Defendant contends that his case is different from *Fox* because the affiant in *Fox* "had personal knowledge of the alleged conversations and emails because he was a party to the communications" but here, the affiant, plaintiff, did not have any personal knowledge of defendant's contact with Mrs. Brown. In *Cooper*, the plaintiff sued the defendant, a South Carolina resident, for alienation of affections and criminal conversation, alleging that the "defendant had wrongfully contacted [the] Plaintiff and [the] Plaintiff's husband by telephone, which contacts included both telephone conversations and telephone transmitted e-mail to Plaintiff's home." *Cooper* at 731, 537 S.E.2d at 856 (quotation marks and brackets omitted). Defendant contends his case is different from *Cooper* because in *Cooper* "the verified complaint alleged that defendant telephoned his spouse in North Carolina, whereas in this case there is no such evidence of record." Again, our Supreme Court has rejected defendant's arguments. *See Brown v. Ellis*, 363 N.C. 360, 678 S.E.2d 222.

Although plaintiff was not a party to any communications with defendant and the complaint did not specifically allege that plaintiff's wife was in North Carolina when defendant contacted her by telephone and email, our Supreme Court has held that the complaint is sufficient to support the inferences of personal knowledge and contact with plaintiff's wife within North Carolina:

In his supporting affidavit, plaintiff specifically averred that defendant's alienation of his wife's affections occurred within the jurisdiction of North Carolina. Although the complaint does not specifically state that plaintiff's wife was physically located in North Carolina during the telephonic and e-mail communications, that fact is nevertheless apparent from the complaint.

*Brown v. Ellis*, 363 N.C. at 363-64, 678 S.E.2d at 224 (quotation marks omitted). Based upon the Supreme Court's opinion, which held that plaintiff's complaint was sufficient to demonstrate plaintiff's personal knowledge of "defendant's alienation of his wife's affections" in North Carolina and that plaintiff's "wife was physically located in North Carolina during the telephonic and email communications[,]" we must reject defendant's contentions regarding *Fox* and *Cooper* in this regard. *Id.*

Defendant also distinguishes his case from *Fox* and *Cooper* because the defendants in those cases were from Georgia and South

Carolina respectively; thus, there was "a minimal travel burden on [the] defendant[s]." *Cooper* at 736, 537 S.E.2d at 858; *see Fox* at 560, 626 S.E.2d at 845. On this point, it is true that the travel burden on defendant, a California resident, would be much greater than that imposed on a resident of Georgia or South Carolina. However, we must consider all of the factors regarding minimum contacts, not just convenience of the parties.

When we consider the totality of the factors, the plaintiff did allege sufficient facts to support a finding of minimum contacts. As to the first factor, the "quantity of the contacts between the defendant and the forum state," *Brown v. Meter*, ⸺ N.C. App. at ⸺, 681 S.E.2d at 388, plaintiff alleged that defendant initiated "almost daily" contact with plaintiff's wife in North Carolina. *Brown v. Ellis*, 363 N.C. at 363, 678 S.E.2d at 224. From this we infer a substantial quantity of contacts by telephone or email, although it is not necessary that the plaintiff allege any particular number of contacts. *See Cooper* at 735, 537 S.E.2d at 858 ("The quantity of defendant's contacts with North Carolina may not have been extensive. However, we have already determined that the contacts were sufficient for purposes of N.C. Gen. Stat. § 1-75.4, especially considering that the alleged injury under the claim (ultimately the destruction of plaintiff's marriage) was suffered by plaintiff allegedly within this state.") On the second factor, the "quality and nature of the contacts," *Brown v. Meter*, ⸺ N.C. App. at ⸺, 681 S.E.2d at 388, plaintiff alleged that the contacts from defendant involved his pursuit of a "sexual and romantic relationship with" plaintiff's wife. *Brown v. Ellis*, 363 N.C. at 361, 678 S.E.2d at 223. The third factor is "the source and connection of the cause of action to the contacts," *Brown v. Meter*, ⸺ N.C. App. at ⸺, 681 S.E.2d at 388, and the contacts directly relate to plaintiff's causes of action for alienation of affections and criminal conversation. As to the fourth factor, "the interest in the forum state," *id.*, our courts have previously noted that North Carolina's interest in this type of lawsuit "is especially great" because alienation of affections and criminal conversation are not recognized torts in many states. *See Eluhu v. Rosenhaus*, 159 N.C. App. 355, 364, 583 S.E.2d 707, 713 (2003) ("It is important to note that plaintiff cannot bring the claims for alienation of affections and criminal conversation in (defendant's resident state) since that state has abolished those causes of actions." (citation and ellipses omitted)), *aff'd per curiam*, 358 N.C. 372, 595 S.E.2d 146 (2004). California, the state in which defendant resides, abolished the causes of action of alienation of affection and criminal conversation in 1939. *See* Cal. Civ. Code § 43.5(a)-(b) (2007) ("No cause of action

arises for: (a) Alienation of affection. (b) Criminal conversation."). On the last factor, "convenience of the parties," *Brown v. Meter,* —— N.C. App. at ——, 681 S.E.2d at 388, plaintiff resides in North Carolina, and defendant resides in California. The only factor to weigh in defendants' favor is the inconvenience of attending to litigation in North Carolina, but plaintiff has alleged that evidence regarding his claims is located in North Carolina. When we consider the totality of these factors in light of our Supreme Court's guidance in its opinion, we conclude that plaintiff has alleged sufficient facts to satisfy minimum contacts. We conclude "that traditional notions of fair play and substantial justice are not offended by maintenance of the suit[,]" *id.* (citations and quotation marks omitted), and thus defendant's rights to due process in regard to personal jurisdiction have not been violated. This argument is overruled.

## III. Notice

Defendant's last argument is that "the trial court erred in denying the motion for a new trial because defendant did not receive adequate notice of the trial in accordance with due process requirements[.]" (Original in all caps.) Defendant's motion for new trial and his argument on appeal are premised upon the fact that he did not receive any notice of the trial date until the Friday before the Monday on which the trial took place.

On 4 October 2002, defendant was served with the summons and complaint at the Sheriff's Office in Laguna Hills, California. Defendant's address on the summons was "*28442* Calle Pinata San Juan Capistrano, California 92675-6326[.]" (Emphasis added.)[1] On 3 December 2002, defendant, through his attorney Ms. Cynthia A. Hatfield, filed a motion for extension of time to respond to the complaint, which the trial court granted. In December of 2002, Ms. Hatfield also filed a motion to dismiss the case for lack of personal jurisdiction over defendant. On 29 March 2004, defendant filed an affidavit in support of his motion to dismiss. On 6 April 2004, the trial court denied defendant's motion to dismiss. The order denying defendant's motion to dismiss was served upon Ms. Hatfield, as defendant's attorney. On or about 28 April 2004, defendant filed a verified answer denying most of the allegations of the complaint.

On 9 June 2004, Ms. Hatfield filed a motion to withdraw as defendant's counsel. The certificate of service on the motion to with-

---

1. As defendant was actually served with the documents noting his address as "28442 Calle Pinata[,]" we will refer to this address as his service address.

draw stated that she had mailed a copy of the motion to defendant at "*28422* Calle Pinata San Juan Capistrano, CA 92675[.]" (Emphasis added.) The address on the certificate of service for the motion to withdraw is not defendant's service address, as the street address differs by one digit. On 19 July 2004, the trial court entered an order allowing Ms. Hatfield's motion to withdraw; again, the certificate of service for the order allowing withdrawal stated that the order was mailed to defendant at "28422 Calle Pinata[,]" the incorrect address. On 5 November 2004, the trial court held an administrative session to schedule trial of this matter; defendant was not present and was not represented by counsel. The trial court entered an order setting the case for trial during the "January 31, 2005 Session of Guilford County Superior Court." The order stated that a copy would be mailed to defendant but did not state his specific address.

When the case was called for trial on 31 January 2005, defendant was not present or represented. Prior to starting the trial, the trial court put on the record testimony from Ms. Faye Byrd, Judicial Assistant to the Superior Court Judge, regarding the court's notification to defendant. Ms. Byrd testified that she mailed the trial calendar to defendant at "28422 Calle Pinata[,]" the incorrect address. Prior to starting the trial, plaintiff's attorney also informed the trial court that he had

> retained a private investigator in California for the purposes, not necessarily of providing notice to Mr. Ellis, because we think he already has notice, but for verifying for me that this was his correct address. And I have with me in court, which arrived in my office by express mail about an hour ago, a notarized Proof of Service from Jim Zimmerman, who is a private investigator, Badge #12651, in San Juan Capistrano, who averred that he served Mr. Ellis personally with the order setting this matter for hearing today at *28442* Calle Pinata, San Juan Capistrano, California, 92675.

(Emphasis added.) Although plaintiff's attorney stated that the private investigator had served defendant on the preceding Friday at 28442 Calle Pinata, the service address, it appears that neither he nor anyone else present in the courtroom realized at that time that this address differed from the one to which the prior relevant notices had been mailed. Therefore, defendant's attorney's motion to withdraw, the order allowing the motion to withdraw, the order setting the trial date, and the trial calendar mailed from the trial court were all mailed

to the incorrect address. The record contains no indication that defendant received any notices or documents regarding the case after the trial court denied his motion to dismiss, and defendant's first notification of the trial date was on Friday, 28 January 2005, when the order setting the trial date was personally delivered to him by plaintiff's private investigator.

After the inquiry regarding defendant's notice of the trial, the trial court proceeded with the case and plaintiff was awarded a monetary judgment against defendant. However, three days after the trial, on 3 February 2005, plaintiff's counsel realized that an error in the address had been made, and he informed the trial court that the address at which the private investigator had served defendant was not the same as the address to which prior documents and notices had been mailed. The trial court made a record of this information but took no action upon it.

On or about 15 February 2005, defendant, through his new attorney Marshall F. Dotson, III, filed an amended motion for new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, alleging in pertinent part that he was entitled to a new trial under Rule 59(a)(1), "[a]ny irregularity by which any party was prevented from having a fair trial[,]" (7) "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law[,]" and/or (9) "[a]ny other reason heretofore recognized as grounds for new trial." On 11 July 2005, defendant filed a declaration stating that he had been unaware that Ms. Hatfield had withdrawn as his counsel and that he was not aware that trial was scheduled for 31 January 2005 until 28 January 2005, when plaintiff's private investigator served him. Defendant averred that

> [c]ommencing on Saturday, January 29, 2005, I attempted to contact Attorney Cynthia A. Hatfield by telephone. It was not until on or about February 7, 2005 that I was able to speak to someone in her office. I was advised that Ms. Hatfield was not able to assist me as she had a conflict with representing me in the case.

On 13 December 2005, the trial court denied defendant's motion for a new trial.

A. Notice of Appeal from Order Denying New Trial

[2] Before we consider the merits of defendant's appeal, we must address plaintiff's argument that defendant failed to appeal specifically from the 13 December 2005 order denying his motion for a new trial. Defendant's notice of appeal reads,

Defendant in the above-entitled cause hereby gives written notice of appeal to the North Carolina Court of Appeals from the Order rendered in this cause during the February 2, 2005 Session of Superior Court for the Eighteenth Judicial District held in High Point, Guilford County, North Carolina; Defendant's motion for new trial filed pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, having been denied by the aforesaid Court by Order rendered December 12, 2005 and filed December 13, 2005.

Plaintiff argues that it is not clear whether defendant was appealing from both the 2 February 2005 judgment and the 13 December 2005 order or from only the 2 February 2005 judgment.

North Carolina Rule of Appellate Procedure 3(d) provides that "[t]he notice of appeal required to be filed and served by subsection (a) of this rule . . . shall designate the judgment or order from which appeal is taken . . . ." N.C.R. App. P. 3(d). In *Fearrington v. Univ. of North Carolina*, 126 N.C. App. 774, 487 S.E.2d 169 (1997), this Court noted that where the notice of appeal completely fails to mention an order, the notice of appeal is deficient. *Id.* at 777, 487 S.E.2d at 172. In *Fearrington*, we noted that:

The notice of appeal specifies that the appeal is from the order of the Superior Court of Orange County entered 8 August 1996. However, by his first assignment of error, petitioner attempts to present for our review the propriety of the order of 2 September 1993 issued by the Superior Court of Wake County, from which an earlier appeal was dismissed by this Court as interlocutory. N.C.R. App. P. 3(d) (1995) requires that the notice of appeal designate the judgment or order from which appeal is taken. *Because the notice of appeal completely omits any reference to the Wake County order, we are without jurisdiction to review it.* The jurisdictional requirements of N.C.R. App. P. 3(d) may not be waived by this Court, even under the discretion granted by N.C.R. App. P. 2. However, N.C.R. App. P. 21(a)(1) gives this Court the authority to treat the purported appeal as a petition for writ of *certiorari* to review the Wake County order, and we elect to do so and consider the merits of petitioner's assignment of error.

*Fearrington* at 777-78, 487 S.E.2d at 172 (citations, quotation marks, and ellipses omitted).

Defendant's notice of appeal, unlike the notice in *Fearrington*, does make specific reference to both the judgment and order. In fact,

**BROWN v. ELLIS**

[206 N.C. App. 93 (2010)]

the order is mentioned in detail: "Defendant's motion for new trial filed pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, having been denied by the aforesaid Court by Order rendered December 12, 2005 and filed December 13, 2005." Although defendant could have worded the notice of appeal more artfully, we conclude that the wording is sufficiently clear to notice an appeal from both the judgment and the order, and thus we will consider the merits of defendant's appeal.

B. Notice of Trial

[3] Defendant argues that "the trial court erred in denying the motion for a new trial because defendant did not receive adequate notice of the trial in accordance with due process[.]" (Original in all caps.) "Whether a party has adequate notice is a question of law, which we review *de novo*." *Swanson v. Herschel*, 174 N.C. App. 803, 805, 622 S.E.2d 159, 160 (2005) (citation omitted). "[W]here the Rule 59 motion involves a question of law or legal inference, our standard of review is *de novo*." *Batlle v. Sabates*, —— N.C. App. ——, ——, 681 S.E.2d 788, 799 (2009) (citations, quotation marks, and brackets omitted). We will therefore review the trial court's denial of the motion for new trial *de novo*. *See id.*

This Court has recognized that "[n]otice and an opportunity to be heard" are "essential elements of due process of law[.]" *Swanson* at 805, 622 S.E.2d at 160.

> Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, section 17, of the North Carolina Constitution. Notice is adequate if it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Id.* at 805, 622 S.E.2d at 160-61 (citations and quotation marks omitted).

In *Laroque v. Laroque*, this Court examined Rules of Civil Procedure and Rules of Practice governing notice requirements:

> [s]ubject to the provisions of Rule 40(a), N.C. Rules of Civ. Proc. and G.S. § 7A-146, the calendaring of civil cases is controlled by Rule 2 of the General Rules of Practice for the Superior and District Courts. Rule 2 provides that a ready calendar shall be

maintained by the Clerk of Court and that five months after a complaint is filed the clerk shall place that case on the ready calendar. From the ready calendar a tentative calendar shall be prepared and shall be mailed to each attorney of record four weeks before the first day of court. A final calendar shall likewise be prepared and mailed to each attorney of record no later than two weeks prior to the first day of court. Rule 2(d) requires that when an attorney desires a case placed on the ready calendar earlier than five months after complaint is filed, he shall file a certificate of readiness with the clerk, with copy to opposing counsel. The clerk shall immediately place said case on the ready calendar. Thus the rule contemplates that systematic notice of the calendaring of a case be given to a party at each stage of the calendaring process.

*Laroque v. Laroque*, 46 N.C. App. 578, 580, 265 S.E.2d 444, 445-46 (quotation marks and brackets omitted), *disc. review denied*, 300 N.C. 558, 270 S.E.2d 109 (1980). Thus, Rule 2 of the General Rules of Practice for the Superior and District Courts contemplates that a party should get at least two notifications from the court prior to a trial date: a tentative calendar at least four weeks prior to trial and a final calendar at least two weeks prior to trial. *See id.* at 580, 265 S.E.2d at 445. A party may also have notice in the form of a certificate of readiness filed by another party in the case. *See id.* at 580, 265 S.E.2d at 445-46. In this case, an administrative order setting the trial and at least one calendar were mailed to defendant by the trial court, but neither was mailed to defendant's service address.

Although, once a court has obtained jurisdiction in a cause through the service of original process, a party has no constitutional right to demand notice of further proceedings in the cause, the law does not require parties to dance continuous or perpetual attendance on a court simply because they are served with original process.

The law recognizes that it must make provision for notice additional to that required by the law of the land and due process of law if it is to be a practical instrument for the administration of justice. For this reason, the law establishes rules of procedure admirably adapted to secure to a party, who is served with original process in a civil action or special proceeding, an opportunity to be heard in opposition to steps proposed to be taken in the civil action or special proceeding where he has a legal right to

resist such steps and principles of natural justice demand that his rights be not affected without an opportunity to be heard.

*Id.* at 581, 265 S.E.2d at 446 (citation and quotation marks omitted). Therefore, even though service of the summons and complaint on the defendant gave the court jurisdiction over defendant, due process still requires compliance with procedural rules governing notice. *See id.*

*Laroque* went on to note that despite the reference in Rule 2 to mailing notices to the "attorney of record[,]" where a party is unrepresented, notice must be provided to the party directly. *See id.*

> Rule 2 of the Rules of Practice, by requiring notice of the calendaring of a case, secures to a party the opportunity to prepare his case for trial and to be present for trial or to seek a continuance. Although the rule specifies that the calendar be sent to each attorney of record and that the copy of the certificate o[f] readiness be sent to opposing counsel, it is implicit in the rule that where a party is not represented by counsel he is entitled to the same notice. We note that it has long been the practice in this State that when a party to an action does not have counsel, a copy of each calendar on which his action appears calendared for trial is mailed to him at the last address available to the Clerk.

*Id.* (citation omitted).

As noted in *Laroque*, the clerk is to send the notice to the "last address available to the Clerk." *Id.* Plaintiff argues that the Clerk did mail the calendars to the "last address available" to her and cites to *Dalgewicz v. Dalgewicz*, 167 N.C. App. 412, 606 S.E.2d 164 (2004). In *Dalgewicz*, the defendant filed a motion to set aside an equitable distribution judgment and an order awarding sanctions against him; the defendant claimed he had no notice. *Id.* at 418, 606 S.E.2d at 168. The trial court denied the defendant's motion because the defendant "was neglectful and inattentive to his case[,]" and the defendant appealed. *Id.* This Court affirmed the trial court's denial of defendant's motion for a new trial because

> the record indicates that defendant was properly served with a civil summons and complaint on 23 April 2001. Defendant does not deny that plaintiff's original and amended complaints were served upon him properly, *nor does defendant deny that he was properly served with a civil summons as well as the trial court's*

*25 July 2002 order, which advised the parties that the matter was set for an equitable distribution trial on 4 November 2002.*

*Id.* at 419, 606 S.E.2d at 169 (emphasis added). In *Dalgewicz*, the defendant received an order setting the case for trial. *See id.* But here neither the scheduling order nor the court calendar was mailed to the service address, through no fault of defendant. Defendant had no way of knowing and no reason to know that both his original counsel and the trial court were sending documents to him at an incorrect address until after he was notified of the trial three days before it was to begin and he was able to contact an attorney in North Carolina.

We conclude that *Laroque* is more on point with our current case. *See Laroque*, 46 N.C. App. 578, 265 S.E.2d 444.

In *Laroque*,

a copy of the calendar request or certificate of readiness was not sent to defendant as required by Rule 2(d) when an attorney desires a case placed on the ready calendar earlier than five months after the complaint is filed. Nor is there anything in the record to show that there was a trial calendar mailed to defendant. *Defendant received no notice of the trial* which was held one day after her answer was filed and 30 days after the complaint was served.

*Id.* at 581, 265 S.E.2d at 446 (emphasis added). This Court noted that while cases have concluded that

a party to a legal action, having been duly served with process, is bound to keep himself advised as to the time and date his cause is calendared for trial for hearing; and when a case is listed on the court calendar, he has notice of the time and date of the hearing[,]

the key to each of those cases "was neglect and inattention by the party or his counsel." *Id.* at 582, 265 S.E.2d at 446. In *Laroque* we found no neglect on the part of the defendant and that the constructive notice which arises solely from the trial having been calendared offended "common sense and fundamental fairness[,]" so we reversed and remanded the trial court order denying the defendant's motion to set aside the judgment. *Id. Laroque* controls the result in this case because both cases involve defendants who were *never* properly notified of their trial dates through no fault of their own. Although defendant received actual notice on Friday, 28 January 2005 of his trial date three days later, on Monday, this notice was entirely inadequate.

Defendant resided on the other side of the country, in California. Upon receiving notice, he immediately contacted Ms. Hatfield's office, as he was unaware that she was no longer his attorney. The record does not demonstrate that defendant was neglectful or inattentive to the case. We therefore reverse the trial court's order denying defendant's motion for a new trial and remand this case for further proceedings.

## IV. Conclusion

Defendant had minimum contacts with North Carolina sufficient that North Carolina may exercise personal jurisdiction over defendant that comports with due process. However, defendant did not receive proper notice of his trial date and must be granted a new trial. The judgment against defendant is hereby vacated, the order denying defendant's motion for new trial is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

VACATED IN PART; REVERSED AND REMANDED IN PART.

Chief Judge MARTIN and Judge HUNTER, Robert C. concur.