IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1133

Filed: 2 June 2020

Wake County, No. 18 CVD 600701

MARISA MUCHA, Plaintiff,

v.

LOGAN WAGNER, Defendant.

Appeal by defendant from orders entered 13 June and 27 June 2018 by Judge Debra S. Sasser in Wake County District Court. Heard in the Court of Appeals 4 September 2019.

*Parrott Law PLLC, by Robert J. Parrott Jr., for defendant-appellant.*

*No appellee brief filed.*

*Erik R. Zimmerman and Andrew R. Wagner, court-appointed amicus curiae.*

DIETZ, Judge.

Logan Wagner and Marisa Mucha were in a relationship. Mucha ended the relationship and asked Wagner not to contact her again. At the time, Mucha was a college student in South Carolina and Wagner lived in Connecticut. Mucha later moved to North Carolina and, the day she moved, Wagner called her 28 times on her cell phone.

In one of the early calls, Mucha answered and told Wagner not to call her again. In a later call, Wagner left a voice message. When Mucha listened to the message,

she suffered a panic attack. The next day, she filed a *pro se* complaint and motion for a domestic violence protective order in Wake County District Court.

Wagner appeared solely to contest personal jurisdiction. The trial court denied his motion to dismiss and entered a protective order. Wagner appealed.

As explained below, the trial court properly determined that it could exercise personal jurisdiction over Wagner. Although Wagner did not know at the time of the calls that Mucha moved from South Carolina to North Carolina that day, he knew that her semester of college had ended and she may no longer be residing there. Thus, his conduct—purposefully directed at Mucha—was sufficient for him to reasonably anticipate being haled into court wherever Mucha resided when she received the calls. Applying the due process factors established by the Supreme Court—the nature and context of Wagner's contacts within our State; our State's interest in protecting its residents from this sort of harmful interpersonal interaction; and the convenience to the parties, including Mucha's need to call witnesses of the events who were with her in North Carolina at the time—we hold that a North Carolina court properly could exercise personal jurisdiction over Wagner in this action.

**Facts and Procedural History**

Marisa Mucha previously was in a relationship with Logan Wagner. That relationship ended in December 2017. Wagner lives in Connecticut. At the end of their

relationship, Mucha lived in South Carolina where she was attending college, but she regularly traveled to Connecticut to visit her family.

In early 2018, while living in South Carolina, Mucha ceased contact with Wagner because she was having "severe panic attacks" and determined that contact from Wagner "would trigger those panic attacks." Mucha told Wagner not to contact her again at some point in January 2018 and again in early May 2018.

Later in May, Wagner saw pictures of Mucha on social media that gave him "cause for concern." One of the pictures, which is included in the record, contains captions indicating that Mucha had concluded "final exams" and that "this semester has truly been the worst."

On 15 May 2018, between 10:00 p.m. and midnight, Mucha received a total of 28 phone calls on her cell phone. The calls all came from an unknown number. On the third or fourth call, Mucha answered her phone and asked who it was. It was Wagner. Mucha "got scared" and "hung up." She answered one more time after that and told Wagner not to contact her again. Wagner continued calling and left a voicemail. After listening to the voicemail, Mucha had a panic attack.

Earlier that day, around 3:00 p.m., Mucha moved from South Carolina to North Carolina. The record does not contain any explanation of why Mucha moved but, as noted above, a social media post included in the record indicates that her college semester in South Carolina had ended.

The next day, Mucha filed a *pro se* complaint and motion for a domestic violence protective order in Wake County District Court. She explained that she sought a protective order because she was scared Wagner "was trying to find me – my location."

Wagner moved to dismiss Mucha's complaint for lack of personal jurisdiction. In an accompanying affidavit, he testified that he lives in Connecticut, has no connection to North Carolina, and did not know Mucha had moved to North Carolina until he received notice of her court filings.

On 13 June 2018, the trial court heard both Wagner's motion to dismiss and Mucha's motion for a domestic violence protective order. Wagner appeared solely to contest personal jurisdiction. Mucha testified about various jurisdictional facts, including her relationship with Wagner, her decision to cease contact with him, her efforts to inform him of that decision, the 28 phone calls she received on 15 May 2018 while living in North Carolina, and her resulting panic attack. Other witnesses who were present on the night of the calls also testified about Mucha's reaction and her panic attack.

After hearing the jurisdictional testimony, the trial court announced that it was denying Wagner's motion to dismiss because North Carolina "does have jurisdiction over Mr. Wagner" but explained to Wagner's counsel that "you can't appeal anything until it's reduced to writing and entered." After further testimony,

the trial court announced that it was granting Mucha's motion for a domestic violence protective order. The trial court entered the protective order later that day. Two weeks later, on 27 June 2018, the trial court entered an order denying Wagner's motion to dismiss, accompanied by jurisdictional findings of fact and conclusions of law.

Wagner timely appealed. Mucha, who represented herself in the trial court, did not appear in the appellate proceedings or file an appellee's brief. Because of the importance of the jurisdictional questions Wagner raised in his briefing, this Court appointed *amicus curiae* to brief and argue in defense of the trial court's ruling.

**Analysis**

Wagner argues that the trial court erred in denying his motion to dismiss for lack of personal jurisdiction because he did not have sufficient minimum contacts to subject him to personal jurisdiction in North Carolina. We reject this argument and hold that, based on the particular facts of this case, the trial court's finding of personal jurisdiction was supported by jurisdictional facts concerning Wagner's contacts with Mucha while she was present in our State.

When a trial court makes findings of fact in its ruling on a motion to dismiss for lack of personal jurisdiction, "our review is limited to whether the trial court's findings of fact are supported by competent evidence in the record and whether the conclusions of law are supported by the findings of fact." *State ex rel. Cooper v.*

*Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 304, 655 S.E.2d 446, 448 (2008). We review the trial court's conclusions of law concerning personal jurisdiction *de novo. Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).

"To determine if foreign defendants may be subjected to personal jurisdiction in this State," we must "determine whether our courts can constitutionally exercise such jurisdiction consistent with due process of law." *Schofield v. Schofield*, 78 N.C. App. 657, 659, 338 S.E.2d 132, 133–34 (1986). Our courts can exercise this jurisdiction only if the defendant has sufficient "minimum contacts" with our State that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

This due process test "require[s] that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The "fair warning requirement" can be satisfied "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citations omitted). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474.

Because the test focuses on this purposeful availment, it has a foreseeability component. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* "[C]ourts in appropriate case[s] may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477 (citation omitted). In short, this jurisdictional analysis does not lend itself to bright-line rules; whether sufficient contacts exist "depends upon the particular facts of each individual case." *Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997).

Wagner frames the issue in this case as one involving his lack of knowledge of Mucha's physical location. Wagner had no contacts with North Carolina beyond the 28 phone calls he made to Mucha's phone the day she moved to our State. And he contends that "he had no reason to think Mucha was in North Carolina at the time of those alleged phone calls" because his only information about her whereabouts was

that she was a full-time college student in South Carolina. Thus, he argues, he had "no reason to expect that he could be sued in North Carolina."

Were the facts in this case consistent with Wagner's framing of them, it would be a closer case. But the record does not support Wagner's claim that he had no reason to expect Mucha would be anywhere other than South Carolina. Wagner's own affidavit demonstrates that he was aware Mucha was an out-of-state student at her university, that her family lived in another state, that she "regularly made trips" to visit her family, and that the spring semester had ended. Some university students remain on the campus during the summer, but many do not. They return home or travel elsewhere away from campus. Thus, it was not reasonable for Wagner to assume that the only place Mucha could be when he called her cell phone that night was in South Carolina, where her university was located.

We thus agree with the *amicus* that the fact that Wagner did not know Mucha was in North Carolina when he made the calls does not, by itself, preclude North Carolina's courts from exercising personal jurisdiction. Instead, the jurisdictional analysis depends on weighing and balancing the factors established by the Supreme Court to assess whether Wagner purposefully established sufficient minimum contacts with North Carolina to subject him to personal jurisdiction here. We therefore examine those factors and assess whether they support the trial court's determination.

Our courts have separated the Supreme Court's due process analysis into five discrete factors: "(1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interests of the forum state, and (5) the convenience to the parties." *Cooper v. Shealy*, 140 N.C. App. 729, 734, 537 S.E.2d 854, 858 (2000). We address these factors in turn below.

First, we examine the quantity of contacts. Wagner made 28 separate calls to Mucha's cell phone, most of which occurred after Mucha already answered once, determined the caller was Wagner, and told him not to call her again. These multiple, repeated phone calls, particularly after being told not to call, are "substantial" and weigh in favor of exercising personal jurisdiction. *Brown v. Ellis*, 206 N.C. App. 93, 100, 696 S.E.2d 813, 819 (2010).

We next examine the quality and nature of these calls. As noted above, the calls continued even after Mucha asked Wagner not to call her again. The calls caused Mucha to feel "scared" and, after listening to a voice message left during one of the calls, Mucha suffered a panic attack. Although the content of that voice message is not available in the record, the evidence received by the trial court demonstrated that these calls were harmful to Mucha and she wanted them to stop. These harmful effects that the 28 phone calls had on Mucha, while she was present in North Carolina, likewise support the exercise of personal jurisdiction. *See id.*

Next, we consider the source and connection of the cause of action to the contacts. This factor strongly supports exercising personal jurisdiction. It was Wagner's 28 unwanted calls to Mucha's cell phone that caused her the harm that, in turn, led her to seek a protective order from North Carolina's courts. The calls occurred late in the evening and Mucha sought relief from the court the next day. This creates a powerful connection between the North Carolina contacts and the legal action in North Carolina's courts.

The next factor is the interests of the forum state. Here, too, the factor weighs in favor of jurisdiction. We have held that "North Carolina has a strong interest in protecting its citizens from local injury caused by the tortious conduct of foreign citizens." *Cooper*, 140 N.C. App. at 735, 537 S.E.2d at 858. Our State has the same strong interest in protecting its residents from interpersonal violence or harassment stemming from domestic relationships.

Finally, we consider the convenience to the parties. Admittedly, North Carolina is an inconvenient forum for Wagner, who lives in Connecticut and has no ties to North Carolina. But Mucha lives in North Carolina and so, too, do the witnesses she called to support her legal claim. In similar situations, this Court has determined that, although this factor may not decisively weigh in favor of exercising jurisdiction, it does not preclude jurisdiction when the other factors support it. *See Brown*, 206 N.C. App. at 101, 696 S.E.2d at 819.

In sum, when Wagner purposefully called Mucha 28 times in a single night, repeating the calls even after she answered and asked him not to call her again, he established sufficient minimum contacts with North Carolina to support the exercise of personal jurisdiction. Although Wagner may not have known Mucha moved to North Carolina earlier that day, his conduct—directed at Mucha personally—was sufficient for him to reasonably anticipate being haled into court wherever Mucha resided when she received the calls. *See A.R. v. M.R.*, 351 N.J. Super. 512, 520, 799 A.2d 27, 31–32 (App. Div. 2002) (finding personal jurisdiction in claimant's request for a protective order where the defendant "repeatedly placed telephone calls into this state in his search for her"). Considering the nature and context of Wagner's calls to Mucha and our State's interest in protecting its residents from this sort of harmful interpersonal interaction, we hold that a North Carolina court exercising personal jurisdiction over Wagner in an action for a domestic violence protective order "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.

But we emphasize that this is a close case and our holding is bound to these specific facts, where there was evidence that Wagner had some knowledge of the particular circumstances of Mucha's life and the possibility that, when he called her cell phone, she could be in many different possible locations. *See Saxon*, 125 N.C. App. at 173, 479 S.E.2d at 794. In another case, on different facts, phone calls to the cell

phone of a person in an unknown location may not be sufficient to meet the due process requirements of personal jurisdiction. *See Mannise v. Harrell*, 249 N.C. App. 322, 331, 791 S.E.2d 653, 659 (2016).

Wagner also argues that the trial court erred because exercising personal jurisdiction on these facts is not permitted by North Carolina's long-arm statute. *See* N.C. Gen. Stat. § 1-75.4. The *amicus* contends that this issue is not preserved for appellate review because Wagner did not assert it in his motion to dismiss nor secure a ruling on this issue from the trial court in the challenged order. We agree that the trial court did not address this issue either in its oral ruling or its written order. "In order to preserve an issue for appellate review . . . [i]t is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C. R. App. P. 10(a)(1). Thus, we are unable to engage in appellate review of this issue.

## Conclusion

For the reasons discussed above, we affirm the trial court's orders.

AFFIRMED.

Judges ZACHARY and YOUNG concur.