IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1021

Filed: 31 December 2020

Mecklenburg County, No. 17-CVS-17308

MARK W. PONDER, Plaintiff,

v.

STEPHEN R. BEEN, Defendant.

Appeal by defendant from order entered 29 October 2019 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 August 2020.

*Sodoma Law, P.C., by Amy Elizabeth Simpson, for plaintiff-appellee.*

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, and Claire J. Samuels, for defendant-appellant.*

BRYANT, Judge.

Where the trial court's findings of fact were insufficient to meet the threshold requirements to exercise personal jurisdiction over defendant Stephen R. Been pursuant to our long-arm statute, General Statutes, section 1-75.4, we reverse the trial court's 29 October 2019 order denying defendant's Rule 12(b)(2) motion to dismiss plaintiff's complaint for lack of personal jurisdiction.

On 14 September 2017, plaintiff Mark W. Ponder filed a complaint against defendant in Mecklenburg County Superior Court seeking compensatory damages in

excess of $10,000.00 on the claim of alienation of affection, as well as punitive damages.

Plaintiff alleged that he met a woman named Mary in 2008, and the couple wed on 26 June 2010. Mary had two children from a previous relationship and worked in the home as a stay-at-home mother. On 13 November 2013, the parties separated following the issuance of a domestic violence restraining order against plaintiff. In his complaint, plaintiff contended that Mary occasionally traveled to his condo in Naples, Florida for recreation and relaxation. In 2013, she met defendant, who was a Florida resident. In November 2013, plaintiff accused Mary of having an affair. Before the separation, while Mary still resided in North Carolina, plaintiff alleged that Mary and defendant engaged in frequent communications by email, text message, and telephone. Plaintiff argued that defendant sent Mary airline tickets and "other things of value." Further, plaintiff argued that after 13 November 2013, defendant paid legal fees for services by an attorney who practiced exclusively in Mecklenburg County.

Following her separation from plaintiff, Mary and her children relocated to Naples, Florida in June 2014. Mary and her children resided in homes owned by defendant. Plaintiff asserted that "[w]ith full knowledge of her marital status, [d]efendant, willfully, maliciously and intentionally engaged in a campaign to

alienate [Mary] from [p]laintiff, and to damage if not destroy the bonds of matrimony that existed between them."

On 3 January 2018, defendant filed a motion to dismiss plaintiff's civil action for lack of personal jurisdiction. Defendant noted that this was the second action plaintiff had filed against defendant in a North Carolina court claiming alienation of affection. The first action was commenced 5 November 2015, and plaintiff voluntarily dismissed it on 15 September 2016, after defendant moved to dismiss pursuant to Rule 12(b)(2) ("Lack of jurisdiction over the person"). As to the current action, defendant again challenged the court's exercise of personal jurisdiction over him as a violation of North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, and the Due Process Clause under the Fourteenth Amendment of the United States Constitution.

In support of his motion to dismiss, defendant filed a brief challenging the exercise of personal jurisdiction as a violation of due process. In response, plaintiff filed "points and authorities in opposition to defendant's motion to dismiss," and he asserted that prior to plaintiff and Mary's separation, Mary and defendant communicated by telephone 476 times between 30 June and 13 November 2013. A hearing on the matter was conducted on 4 March 2019 in Mecklenburg County Superior Court, before the Honorable William R. Bell, Judge presiding. On 29 October 2019, the trial court entered its order denying defendant's motion to dismiss.

Defendant appeals.

_____

On appeal, defendant argues that the trial court erred by making insufficient findings of fact in support of its ruling to deny defendant's motion to dismiss for lack of personal jurisdiction and concluding that the exercise of personal jurisdiction over defendant could be exercised in compliance with North Carolina's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Right to Appeal*

In *Love v. Moore*, our Supreme Court held that a right of immediate appeal exists from an order finding jurisdiction over the person, made on the basis of "minimum contacts" (the subject matter of Rule 12(b)(2)). 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982); *see also* N.C. Gen. Stat. § 1-277(b) (2019).

*Personal Jurisdiction*

Defendant argues the trial court erred by denying his motion to dismiss for lack of personal jurisdiction. We agree.

> "The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record[.]" *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140–41, 515 S.E.2d 46, 48 (1999). " 'Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.' " *Nat'l Util. Review, LLC v. Care Ctrs., Inc.*, 200 N.C. App. 301, 303, 683 S.E.2d 460, 463 (2009) (quoting *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d

729, 731 (1991)). We review *de novo* the issue of whether the trial court's findings of fact support its conclusion of law that the court has personal jurisdiction over defendant. *Id.*

*Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011).

> To resolve a question of personal jurisdiction, the court must engage in a two step analysis. First, the court must determine if the North Carolina long-arm statute's (N.C. Gen. Stat. § 1–75.4) requirements are met. If so, the court must then determine whether such an exercise of jurisdiction comports with due process.

*Cooper v. Shealy*, 140 N.C. App. 729, 732, 537 S.E.2d 854, 856 (2000) (citation omitted).

*Long-Arm Statute*

Pursuant to our General Statutes, section 1-75.4 ("Personal jurisdiction, grounds for generally"),

> [a] court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action . . . under any of the following circumstances:
>
> . . . .
>
> (3) **Local Act or Omission.** -- In any action claiming injury to person . . . within or without this State arising out of an act or omission within this State by the defendant.
>
> (4) **Local Injury; Foreign Act.** -- . . . [I]n any action claiming injury to person . . . within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

5

> a. Solicitation . . . w[as] carried on within this
> State by or on behalf of the defendant[.]

N.C. Gen. Stat. § 1-75.4(3) and (4)a. (2019). "[T]his Court has acknowledged that actions for alienation of affection[] and criminal conversation constitute injury to person or property as denoted by N.C. Gen. Stat. § 1–75.4(3)." *Cooper*, 140 N.C. App. at 733, 537 S.E.2d at 857 (citation and quotation marks omitted); *see also Brown v. Ellis*, 363 N.C. 360, 678 S.E.2d 222 (2009) (per curiam) (upholding the trial court's exercise of personal jurisdiction over a non-resident defendant in a civil action for alienation of affection pursuant to N.C. Gen. Stat. § 1–75.4(4)a.).

"We recognize that [General Statutes, section 1-75.4,] requires only that the action 'claim' injury to person or property within this state in order to establish personal jurisdiction." *Fox v. Gibson*, 176 N.C. App. 554, 558, 626 S.E.2d 841, 843 (2006) (citations and quotations omitted). Moreover, "the failure to plead the particulars of personal jurisdiction is not necessarily fatal, so long as the facts alleged permit the reasonable inference that jurisdiction may be acquired." *Tompkins v. Tompkins*, 98 N.C. App. 299, 304, 390 S.E.2d 766, 769 (1990) (citation omitted).

In his complaint, plaintiff alleged the following:

> 6.    Plaintiff and [Mary] . . . were married on June 26, 2010 . . . .
>
> . . . .
>
> 8.    Throughout the course of their marriage, Plaintiff and [Mary] enjoyed a true and genuine marital

6

relationship of love and affection.

. . . .

10. On November 13, 2013, Plaintiff and [Mary] legally separated . . . .

. . . .

12. Plaintiff owns a condo in Naples, Florida. [Mary] traveled to the condo alone for purposes of recreation and relation and during 2013 she traveled more and more frequently to Naples . . . .

13. While on those trips [Mary] met Defendant. When [Mary] returned to North Carolina . . . she seemed changed, distant and less affectionate. Plaintiff began to suspect [Mary] was having an affair.

14. Plaintiff began to search phone records and then caught [Mary] in a lie about her whereabouts and who she was with the weekend of November 8, 2013. Plaintiff confronted [Mary] about the lie and whether she was having an affair on Sunday, November 10, 2013. She denied it.

. . . .

16. From the day [defendant and Mary] met in 2013 through the date of separation of the parties, Defendant initiated and engaged in regular and frequent communication with [Mary] while she resided and was located in North Carolina by email, text message, and telephone. Defendant knew or at the very least could infer that [Mary] was located in North Carolina during these communications.

. . . .

18. Prior to November 13, 2013, Defendant delivered

communications, airline tickets and other things of value to [Mary] while she was residing in North Carolina.

. . . .

21.    Defendant has known since the day he met [Mary] that she was a married woman and . . . has at all times acted in conscious disregard of the union.

22.    With full knowledge of her marital status, Defendant . . . engaged in a campaign to alienate [Mary] from Plaintiff, and to damage if not destroy the bonds of matrimony that existed between them.

"Where unverified allegations in the complaint meet [the] plaintiff's initial burden of proving the existence of jurisdiction . . . and [the] defendant[] d[oes] not contradict [the] plaintiff's allegations in [his] sworn affidavit, such allegations are accepted as true and deemed controlling." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 218 (2000) (second alteration in original).

> [But] when a defendant supplements its motion [to dismiss] with affidavits or other supporting evidence, the allegations of the plaintiff's complaint can no longer be taken as true or controlling and [the] plaintiff[ ] cannot rest on the allegations of the complaint, but must respond by affidavit or otherwise . . . set[ting] forth specific facts showing that the court has jurisdiction.

*Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 163, 565 S.E.2d 705, 708 (2002) (citations and quotations omitted).  Whether the trial court rules on the defendant's challenge to the exercise of personal jurisdiction based on the affidavits or conducts a hearing with witness testimony or depositions, N.C. Gen. Stat. § 1A-1, Rule 43(e),

where the defendant challenges the exercise of personal jurisdiction, "the burden is on the plaintiff to prove by a preponderance of the evidence that grounds exist for the exercise of personal jurisdiction over a defendant." *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 359, 583 S.E.2d 707, 710–11 (2003) (citation and quotations omitted), *aff'd*, 358 N.C. 372, 595 S.E.2d 146 (2004).

On 3 January 2018, defendant moved to dismiss plaintiff's lawsuit for lack of personal jurisdiction (including affidavits by defendant and Mary in which both deny having had an affair or a sexual relationship), and on 28 February 2019, defendant further supported his motion to dismiss with a brief challenging the exercise of personal jurisdiction as a violation of due process. In materials provided to the court, defendant acknowledged having spoken with Mary via telephone and emailing her, though he did not indicate that these communications were frequent. Plaintiff filed points and authorities in which he asserted that defendant provided Mary with a cell phone and between 30 June and 13 November 2013, communicated with Mary 476 times. During the 4 March 2019 hearing on the matter, plaintiff presented phone records listing phone calls made from defendant's phone to a number with a 704 area code but failed to present evidence that the phone number reflected on the records was to a number associated with Mary.

For a moment, let us consider the exercise of personal jurisdiction over defendant as it comports to the Due Process Clause.

2

"[I]f the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Brown*, 363 N.C. at 363, 678 S.E.2d at 223 (citing *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006)).

To satisfy the due process prong of the personal jurisdiction analysis, there must be sufficient 'minimum contacts' between the nonresident defendant and our State 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)) (quotation marks omitted).

> The United States Supreme Court has noted two types of long-arm jurisdiction. Where the controversy arises out of the defendant's contacts with the forum state, the state is said to be exercising "specific" jurisdiction. In this situation, the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction. Where the controversy is unrelated to the defendant's activities within the forum, due process may nevertheless be satisfied if there are "sufficient contacts" between the forum and the defendant.

*Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984)).

*Specific Jurisdiction*

In the exercise of specific jurisdiction, "the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction." *Id.* "[T]here must be sufficient 'minimum contacts' between the nonresident defendant and our state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Skinner*, 361 N.C. at 122, 638 S.E.2d at 210 (quoting *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158, 90 L. Ed. at 102).

Following, our Supreme Court's issuance of its opinion in *Brown*, 363 N.C. 360, 678 S.E.2d 222 (holding that frequent phone calls and email solicitations by the out-of-state defendant regarding the romantic and sexual relationship with the plaintiff's wife were sufficient to satisfy North Carolina's long-arm statute), the matter was remanded to this Court to address whether the defendant had

> "minimum contacts" with the State of North Carolina sufficient to satisfy the requirements of due process.
>
> . . . .
>
> Although a determination of whether the required minimum contacts are present necessarily hinges upon the facts of each case, there are several factors a trial court typically evaluates in determining whether the required level of contacts exists: (1) quantity of the contacts between the defendant and the forum state, (2) quality and nature of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest in the forum state, and (5) convenience of the parties.

*Brown v. Ellis*, 206 N.C. App. 93, 97, 696 S.E.2d 813, 817 (2010) (citations, quotation marks, and indentation omitted); *see also id.* at 98, 696 S.E.2d at 818 (holding because the "alienation of [the] [plaintiff's] wife's affections occurred within the jurisdiction of North Carolina[,] the factual allegations permit the reasonable inference that personal jurisdiction over [the] defendant could properly be acquired in this case" (second and third alterations in original) (citations and quotations omitted)).

In plaintiff's points and authorities submitted in response to defendant's motion to dismiss and brief, plaintiff asserted that defendant provided Mary with a cell phone that defendant used to communicate with her and that he paid Mary's legal fees in the domestic violence litigation which resulted in a domestic violence protective order being entered against plaintiff. Moreover, plaintiff asserted that the quality of the communications between defendant and Mary controls the minimum contacts question. Plaintiff also contended that his claim would not be recognized in Florida and that defendant has the means to travel to North Carolina such that it would not be inconvenient for him.

*The Trial Court's 29 October 2019 Order*

In its 29 October 2019 order denying defendant's motion to dismiss, the court made its ruling after considering "the Motion[s], the court file, the law presented by counsel, [and] the briefs and evidentiary materials submitted by counsel."

3. In his Motion, Defendant moved the [c]ourt

12

pursuant to Rule 12(b)(2) for a dismissal with prejudice based on his Florida residency and domicile, and that he had not specifically availed himself to the laws of the State of North Carolina.

4.      With regard to Defendant's Motion pursuant to Rule 12(b)(2), said Motion should be DENIED. The [c]ourt finds the following:

      a.      Defendant availed himself to the laws of the State of North Carolina by actively communicating electronically with Mary Ponder on or before the date she and Plaintiff separated on November 13, 2013, while Mary was still living in North Carolina. This finding is supported by *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000), which held that telephone calls and emails were "solicitations" within the meaning of N.C. Gen. Stat. § 1-75.4(4)a.; and

      b.      This [c]ourt finds that Defendant's electronic contacts with Mary Ponder while Mary Ponder still lives in North Carolina were significant and that he availed himself to the specific jurisdiction of North Carolina with respect to Plaintiff's claims for alienation of affections.

On these findings of fact, the trial court made the following conclusions:

1.      The [c]ourt has specific jurisdiction over the persons involved in this matter.

2.      The [c]ourt concludes that Defendant had minimum contacts with North Carolina sufficient to establish specific personal jurisdiction within this state regarding Plaintiff's claim for alienation of affections.  As a result, [defendant's motion to dismiss] should be denied.

The evidence presented before the trial court may support a finding that defendant communicated with a telephone number registered in North Carolina, but the evidence does not support finding defendant's communications were with Mary or that their communications were significant. *Cf. Brown*, 363 N.C. 360, 678 S.E.2d 222; *Cooper*, 140 N.C. App. 729, 537 S.E.2d 854.

We hold that the allegations presented in plaintiff's complaint, in conjunction with the points and authorities presented in opposition to defendant's motion to dismiss as well as the evidentiary materials presented before the trial court during the 4 March 2019 hearing, are not sufficient to support the trial court's findings that defendant

> availed himself of the laws of the State of North Carolina by actively communicating electronically with Mary . . . on or before the date she and Plaintiff separated, [or that] . . . Defendant's electronic contacts with Mary . . . were significant and that he availed himself of the specific jurisdiction of North Carolina with respect to Plaintiff's claim for alienation of affections.

Thus, the court's findings fail to meet the threshold for the exercise of personal jurisdiction over defendant pursuant to General Statutes, section 1-75.4. Accordingly, the trial court's 29 October 2019 order denying defendant's motion to dismiss plaintiff's action pursuant to Rule 12(b)(2) is

REVERSED.

Judge BROOK concurs in result only.

Judge STROUD dissents by separate opinion.

No. COA19-1021 – *Ponder v. Been*

STROUD, Judge, dissenting.

Because I conclude the trial court's findings of fact support the trial court's determination that it has personal jurisdiction over defendant, I respectfully dissent and would affirm the trial court's order. I would first note that I agree with the majority's summary of the case. Where I diverge from the majority is in their summation and determination of what the findings of fact establish; namely, the majority concludes they are insufficient to establish personal jurisdiction while I deem them sufficient.

## I. Standard of Review

The standard of review of the issue of personal jurisdiction depends upon the information presented to the trial court. *See Providence Volunteer Fire Department v. Town of Weddington*, 253 N.C. App. 126, 135, 800 S.E.2d 425, 432 (2017). In this case, both parties submitted voluminous evidence.

> [W]hen the parties submit competing evidence— such as affidavits or an affidavit and a verified complaint—the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions. When the trial court decides the motion on affidavits, *the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror*. Even when the trial court is required to weigh evidence, it is not required to make findings of fact unless requested by a party when deciding a motion to dismiss. When the record contains no findings of fact, it will be presumed that the judge, upon proper evidence, found facts sufficient to support his ruling. Where such presumed findings are supported by

> competent evidence, they are deemed conclusive on appeal, despite the existence of evidence to the contrary.

*Id.* (emphasis added) (citations, quotation marks, and footnote omitted).[1]

I begin by emphasizing the proper standard of review because this standard determines whether this Court may substitute its own judgment for that of the trial court. *See generally Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005). While the issue of "jurisdiction" in some contexts presents a legal issue subject to *de novo* review, in actuality "**personal jurisdiction is a question of fact**. *Eluhu v. Rosenhaus*, 159 N.C. App. 355, 357, 583 S.E.2d 707, 710, *aff'd per curiam*, 358 N.C. 372, 595 S.E.2d 146 (2004)." *Bradley v. Bradley*, 256 N.C. App. 1, 5, 806 S.E.2d 58, 62 (2017) (emphasis added) (quotation marks omitted). Indeed, "[t]he determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum *is a question of fact*." *Cooper v. Shealy*, 140 N.C. App. 729, 732, 537 S.E.2d 854, 856 (2000) (emphasis added) (citation and quotation marks omitted). Prior cases have consistently determined the issue before us is one of fact. *See, e.g., Bradley*, 256 N.C. App. at 5, 806 S.E.2d at 62; *Cooper*, 140 N.C. App. at 732, 537 S.E.2d at 856; *Hedden v. Isbell*, 250 N.C. App. 189, 192, 792 S.E.2d 571, 574 (2016); *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999).

Further, and equally important,

---

[1] Defendant filed an affidavit and plaintiff's complaint was verified. In addition, defendant was deposed, and both parties filed multiple exhibits.

> [w]hen this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court. Under Rule 52(a)(2) of the Rules of Civil Procedure, however, the trial court is not required to make specific findings of fact unless requested by a party. When the record contains no findings of fact, it is presumed that the court on proper evidence found facts to support its judgment.

*Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citations, quotation marks, and ellipses omitted). Here too, I emphasize that our cases have consistently determined if the findings of fact are supported by competent evidence, "this Court *must affirm*" the trial court order. *Id.* (emphasis added); see*, e.g., Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 141, 515 S.E.2d 46, 48 (1999); *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995). In other words, no matter how I might have viewed the evidence, this Court's standard is to consider "only whether the findings of fact by the trial court are supported by competent evidence in the record[,]" and, if they are, we "must affirm the order of the trial court." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183.

## II. Findings of Fact

On appeal, defendant does not challenge finding nos. 1-3, and therefore they are binding on this Court. *See Bell v. Mozley*, 216 N.C. App. 540, 543, 716 S.E.2d 868, 871 (2011) (noting unchallenged findings of fact are binding on appeal). The trial court found:

1. Plaintiff filed this action on September 14, 2017, asserting a claim against Defendant for alienation of affections.

2. Defendant, who at all times material to this action has resided and been domiciled in Florida, filed his Motion and certain evidentiary materials on January 3, 2018.

3. In his Motion, Defendant moved the [c]ourt pursuant to Rule 12(b)(2) for a dismissal with prejudice based on his Florida residency and domicile, and that he had not specifically availed himself to the laws of the State of North Carolina.

A.      Classification of Finding of Fact No. 4

Defendant contends "finding of fact" no. 4 is a mixed determination including findings of fact and conclusions of law. "Finding of fact" no. 4 provides,

> 4. With regard to Defendant's Motion pursuant to Rule 12(b)(2), said Motion should be DENIED. The [c]ourt finds the following:
> a. Defendant availed himself to the laws of the State of North Carolina by actively communicating electronically with Mary Ponder on or before the date she and Plaintiff separated on November 13, 2013, while Mary was still living in North Carolina. This finding is supported by *Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854 (2000), which held that telephone calls and emails were "solicitations" within the meaning of N.C. Gen. Stat. § 1-75.4(4)a.; and
> b. This Court finds that Defendant's electronic contacts with Mary Ponder while Mary Ponder still lives in North Carolina were significant and that he availed himself to the specific jurisdiction of North Carolina

with respect to Plaintiff's claims for alienation of affections.

Defendant contends "finding of fact" should be categorized as follows:

**Factual Findings**
➢ Mr. Ponder and [Mary] separated on 13 November 2013;

➢ [Mary] was still living in North Carolina on 13 November 2013;

➢ Mr. Been actively communicated electronically with [Mary] on or before 13 November 2013; and

➢ Mr. Been's electronic contacts with [Mary] while she still was still living in North Carolina were significant.

**Legal Conclusions**

➢ Mr. Been availed himself to the laws of North Carolina through his electronic communications with [Mary] on or before 13 November 2013;

➢ Mr. Been's electronic communications with [Mary] were "solicitations" under the long-arm statute; and

➢ Mr. Been availed himself to the specific jurisdiction of North Carolina with respect to the

> claim for alienation of affections through his electronic contacts with [Mary].

Essentially, defendant seeks a more favorable standard of review on appeal as legal conclusions are reviewed *de novo*. *See generally Green v. Howell*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (COA20-204) (3 Nov. 2020). Defendant invites this Court to substitute its judgment for that of the trial court, and the majority accepted this invitation, coming to a different result than the trial court. However, whether evidence establishes contacts sufficient to support personal jurisdiction "is a question of fact[,]" *Bradley*, 256 N.C. App. at 5, 806 S.E.2d at 62, and we review simply for "competent evidence" to support the findings, which if found, requires we "affirm" the order. *See Banc*, 169 N.C. App. at 694, 611 S.E.2d at 183.

B.    Sufficiency of Findings of Fact to Permit Appellate Review

Defendant next contends "the aforementioned components of Finding of Fact 4 that actually constitute factual findings are insufficient to permit meaningful appellate review" as the trial court failed to comply with his request for written findings of fact under Rule 52(a)(2). As to the first part of defendant's contention, defendant argues if we remove the portions of the finding of fact he contends are "legal conclusions" then the findings of fact are insufficient. I have already explained why the trial court's findings of fact regarding personal jurisdiction are indeed findings and not legal conclusions. *See Bradley*, 256 N.C. App. at 5, 806 S.E.2d at 62.

As to the second part of defendant's contention:

Rule 52(a)(2) specifically provides that findings of fact and conclusions of law are necessary on decisions of any motion or order *ex mero motu* only when requested by a party and as provided by Rule 41(b). A trial court's compliance with the party's Rule 52(a)(2) motion is mandatory. Once requested, the findings of fact and conclusions of law on a decision of a motion, as in a judgment after a non-jury trial, must be sufficiently detailed to allow meaningful appellate review. When the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence, then the order entered must be vacated and the case remanded.

*Agbemavor v. Keteku*, 177 N.C. App. 546, 549, 629 S.E.2d 337, 340 (2006) (citations, quotation marks, ellipses, and brackets omitted). Defendant did request findings of fact, and the trial court made finding of fact. Defendant simply hoped for different findings. While the trial court could have made more detailed findings of fact, I would conclude the findings are sufficient to allow for meaningful appellate review. The majority also recognizes the findings are sufficient to allow review, as it engages in appellate review of the question on appeal. *Contrast with Agbemavor* at 549-51, 629 S.E.2d at 340-41 (vacating and remanding because the trial court made "no findings of fact").

C.     Competency of the Evidence to Support Findings of Fact

Defendant's third contention as to the findings of fact finally addresses the actual issue of whether the trial court's findings are supported by the evidence. Defendant contends "there is no competent evidence to support various factual findings delineated in Finding of Fact 4." Specifically, defendant claims the evidence

does not support the trial court findings of "active" or "substantial" communications with Mary in North Carolina during her marriage to plaintiff. But defendant's arguments actually address the weight of the evidence -- whether it should be deemed "active" or "substantial" -- not its competence. As I have noted, "the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Providence Volunteer Fire Department*, 253 N.C. App. at 135, 800 S.E.2d at 432.

As to issues of actual *competency* of the evidence, defendant contends there is no competent evidence exists (1) linking the phone defendant bought Mary to the 704 number defendant's number was communicating with, and (2) establishing any communication took place while Mary was actually in North Carolina. We first note that plaintiff's complaint was verified, and thus it is a part of the competent evidence, and therefore as to plaintiff's verified complaint and defendant's affidavit, the trial court was to act "as a juror" determining "weight and sufficiency of the evidence." *Id.* Plaintiff's verified complaint contends that

> [f]rom the day they met in 2013 through the date of separation of the parties, Defendant initiated and engaged in regular and frequent communications with [Mary] while she resided and was located in North Carolina by email, text message, and telephone. Defendant knew or at the very least could infer that [Mary] was located in North Carolina during these communications.

Defendant controverted the allegations in the complaint and seems to contend that his assertions somehow cancel out plaintiff's assertion, but again, it was upon the trial court to determine the weight and credibility of each. *See id.*

Defendant seeks to distinguish this case from *Brown v. Ellis*, 363 N.C. 360, 678 S.E.2d 222 (2009), where the Supreme Court determined *per curiam* that the plaintiff's verified complaint and affidavit statements regarding telephone calls and emails to his wife were enough to satisfy the long-arm statute and establish the personal jurisdiction of the defendant. In *Brown*, the only contacts the defendant had in North Carolina were telephone calls and emails to the plaintiff's wife. *See generally id.*, 363 N.C. at 363, 678 S.E.2d at 224. This Court determined the plaintiff failed to show "that defendant solicited plaintiff's wife while she was in North Carolina." *Id.* at 362, 678 S.E.2d at 223 (citation and quotation marks omitted). Specifically, this Court noted the plaintiff's arguments that he had shown personal jurisdiction because he and his wife lived in North Carolina at the relevant time and the defendant had called the wife when she was in plaintiff's presence, although he did not specifically allege they were both in North Carolina at the time:

> Plaintiff offers the following facts in an attempt to show that defendant carried on solicitation activities in the State of North Carolina sufficient to authorize the exercise of personal jurisdiction over defendant: 1) plaintiff is a resident of North Carolina; 2) plaintiff's wife lived with

plaintiff; 3) defendant made phone calls to plaintiff's wife in the presence of plaintiff (although there is no allegation regarding where these calls were actually received); and 4) evidence as to defendant's telephonic contacts with plaintiff's wife can be found in North Carolina (although nothing in the record indicates that actual evidence of such contacts was forecast).

After review of the record, we conclude that it contains no evidence to support the trial court's conclusion that the State of North Carolina may exercise personal jurisdiction over defendant pursuant to the long-arm statute. Even liberally construed, these facts offer no evidence that defendant solicited plaintiff's wife while she was in North Carolina.

*Brown v. Ellis*, 184 N.C. App. 547, 549, 646 S.E.2d 408, 410–11 (2007), *rev'd and remanded per curiam*, 363 N.C. 360, 678 S.E.2d 222 (2009).

The Supreme Court reversed this Court and affirmed the trial court's determination that it had personal jurisdiction over the defendant based only upon these telephone and email contacts. *See Brown*, 363 N.C. 360, 678 S.E.2d 222. The Supreme Court agreed with this Court that the plaintiff had not specifically alleged

his wife was physically present in North Carolina when defendant called her, but she did live in North Carolina at the time and this Court's reading of the complaint was "overly strict[:]"

> In the instant case, defendant argues the complaint failed to allege that plaintiff's wife was in North Carolina at the time she received defendant's telephone calls and e-mail. The Court of Appeals agreed with defendant, concluding there was "no evidence that defendant solicited plaintiff's wife while she was in North Carolina." *Brown*, 184 N.C .App. at 549, 646 S.E.2d at 411. We believe this reading of plaintiff's complaint to be overly strict. Plaintiff alleged that he resided in Guilford County with his wife and daughter and that defendant "initiat[ed] frequent and inappropriate, and unnecessary telephone and e-mail conversations with [plaintiff's wife] on an almost daily basis." According to the complaint, defendant and plaintiff's wife discussed their "sexual and romantic relationship" in the presence of plaintiff and his minor child. In his supporting affidavit, plaintiff specifically averred that defendant's alienation of his wife's affections "occurred within the jurisdiction of North Carolina."

Although the complaint does not specifically state that plaintiff's wife was physically located in North Carolina during the telephonic and e-mail communications, that fact is nevertheless apparent from the complaint. In his own affidavit, defendant never denied that he telephoned or e-mailed plaintiff's spouse in North Carolina; rather, he merely characterized the conversations as work related.

*Id.* at 363–64, 678 S.E.2d at 223–24.

Here, unlike in *Brown*, plaintiff did specifically assert that his wife was in North Carolina when she received the communications from defendant encouraging the destruction of her marriage. *Contrast with id.* at 363-64, 678 S.E.2d at 224. Further, defendant admitted in his deposition that he purchased a cell phone for Mary, and the bill for that phone with a North Carolina zip code is in defendant's name.

Defendant attempts to rely upon his refusal or failure to answer questions in his deposition regarding where Mary was when he communicated with her as evidence that she was not in North Carolina. Of course, this argument again asks this Court to re-weigh the credibility of the evidence, but that is not this Court's role.

*See generally Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183. The evidence supports the trial court's findings.

In his deposition, defendant answered very few questions regarding his communications with Mary and claimed to remember almost nothing, repeatedly stating phrases such as "I just don't have any recollection[;]" "I don't know[;]" "I don't have any recollection right now[;]" and "I don't recall." Contrary to defendant's contentions, his failure to answer questions does not constitute an affirmative showing of evidence that Mary was *not* in North Carolina – her home at that time – when he communicated with her over 400 times as shown by plaintiff's summary of the phone records produced by AT&T. Further, plaintiff asserted that defendant contacted Mary on their *home* phone, in North Carolina. Thus, the fact that defendant does not remember the hundreds of phone calls and text messages reflected in the billing statements is in conflict with the forecast and actual presentation of evidence from plaintiff, and here, the trial court resolved that conflict in favor of plaintiff.

D.     Summary

As to the findings of fact, they are properly classified as findings of fact and sufficient to support meaningful appellate review. The competent evidence supports the findings of fact. Ultimately, the competent evidence supports the findings of fact, and I would overrule defendant's arguments challenging them.

III.     Solicitations

Defendant next contends the trial court erred in concluding he engaged in "solicitations" for purposes of the long-arm statute. Defendant focuses on (1) a lack of evidence that he *initiated* any alleged contact with Mary and (2) his contention that since he denied the allegations of an improper purpose of any alleged communications there was not "evidence sufficient to overcome these sworn denials." Plaintiff asserted in his verified complaint that he and Mary "enjoyed a true and genuine marital relationship of love and affection[,]" and defendant knowingly destroyed "the bonds of matrimony" by his frequent communication with Mary, whom he knew was married, in North Carolina and sending her things of value such as airline tickets.

North Carolina General Statutes § 1-75.2 defines "solicitation" for purposes of jurisdiction as "a request or appeal of any kind, direct or indirect, by oral, written, visual, electronic, or other communication, whether or not the communication originates from outside the State." N.C. Gen. Stat. § 1-75.2 (2013). Defendant argues the trial court's finding that the communications were "solicitations" is a conclusion of law, not a finding of fact, so this Court should review the trial court's determination *de novo*. Defendant has not provided any authority to support his argument for *de novo* review, and to the extent prior cases do address this issue, it has been treated as a finding of fact, and the same standard of review as discussed above applies. *See Cooper*, 140 N.C. App. at 734, 537 S.E.2d at 857 ("The trial judge *found* that the alleged telephone contacts (including telephone calls and telephone transmitted e-mail) were 'solicitations' within the meaning of N.C. Gen. Stat. § 1–75.4(4) and we

agree." (emphasis added)). But whether the "solicitation" issue is a finding of fact or a conclusion of law, the trial court's findings of fact support its conclusion, as does the law.

A.    Initiation of Contact

The trial court's findings and the evidence demonstrate that defendant had direct communications with Mary by cell phone and text messages. But defendant argues that the evidence here does not show that *he* "initiated" the phone calls to Mary and that the evidence does not show sufficient frequency of phone calls, citing to the factual allegation of "almost daily" phone calls in *Brown*.

> ➤    The first call of the day emanated from Mr. Been's cell phone only three times during the pertinent 89-day period covered by those records, (Doc. Ex. 44, 49, 58) (reflecting Mr. Been called first on 2 August 2013, 20 August 2013, and 20 September 2013);
> ➤    Those three calls lasted a grand total of 0 minutes, 0 seconds, (Doc. Ex. 44, 49, 58) (listing an elapsed time ("ET") of 0:00 for each call);
> ➤    The 73 total calls emanating from Mr. Been's cell phone collectively amounted to an ET of just over 68 minutes during the 89-day span. (Doc. Ex. 32-65).

The plain language of North Carolina General Statute § 1-75.2 does not support an assertion that a defendant must initiate the contact within North Carolina to support a finding of "solicitation." *See* N.C. Gen. Stat. § 1-75.2. North Carolina General Statute § 1-75.2 speaks to "a request or appeal of any kind[,]" it does not state, as defendant contends, that the out-of-state defendant must initiate the phone

call, email, text message, or any other form of communication, but rather that once

initiated "a request or appeal" is made, and the trial court did not weigh it of critical

importance here. *Id.* Whether the calls were "originated" or "initiated" by Mary or

defendant, the communications occurred. And in this context, it would be logical for

the trial court to surmise that defendant and Mary would have arranged for their

conversations to occur when no one, particularly plaintiff, was nearby to overhear

them.

> B.      Sufficiency of Evidence for Solicitation

In *Cooper v. Shealy*, this Court found solicitation and a sufficient basis for

personal jurisdiction based on an unspecified number of phone calls and emails made

to the plaintiff's husband when he was living in North Carolina:

> The trial judge found that the alleged telephone
> contacts (including telephone calls and telephone
> transmitted e-mail) were "solicitations" within the
> meaning of N.C. Gen. Stat. § 1–75.4(4) and we agree.
> Plaintiff alleged that defendant telephoned her husband in
> North Carolina in order to solicit his affections and entice
> him to leave his family. In addition, plaintiff claimed that
> she suffered injury, the destruction of her husband's love
> and affection, as the direct result of defendant's wrongful
> conduct. *We conclude, therefore, that the North Carolina
> long-arm statute authorizes personal jurisdiction since the
> plaintiff's injury allegedly occurred within North Carolina
> and was allegedly caused by defendant's solicitation of
> plaintiff's husband's love and affection by telephoning
> plaintiff's home in North Carolina.*

140 N.C. App. at 734, 537 S.E.2d at 857 (emphasis added). In this case, the trial court

had far more evidence regarding the number or frequency of communication than was

present in *Cooper* where solicitation was found for purposes of the long-arm statute. *See id.* at 734-35, 537 at 857-58.

Plaintiff alleged in his verified complaint that the defendant had sent plane tickets to North Carolina and once Mary and her children left North Carolina, they lived in homes in Florida owned by defendant. Defendant's deposition confirmed these allegations. Defendant also admitted to loaning plaintiff $85,000. These alleged results of communications, money and plane tickets, between defendant and Mary are based on circumstantial evidence, but circumstantial evidence is still valid evidence. Unless a plaintiff has managed to obtain direct physical evidence such as recordings of conversations, incriminating photographs or video, or written communications, much of the evidence in cases such as this is normally circumstantial, and this circumstantial evidence may include post-separation conduct. *See Nunn v. Allen*, 154 N.C. App. 523, 534, 574 S.E.2d 35, 42 (2002) ("Under *Pharr*, supra, post-separation conduct is admissible and relevant to corroborate evidence of pre-separation conduct, and the evidence of post-separation conduct here provides strong circumstantial evidence explaining and corroborating defendant's pre-separation conduct.").

North Carolina law also does not require any particular type, frequency, or quantity of communications. *See generally Cooper*, 140 N.C. App. at 734–35, 537 S.E.2d at 858. In *Cooper*, this Court noted the number of contacts was not in the record, so the number of calls was not a controlling factor. *See id.* In fact, this Court

cited favorably to a federal case in which a single phone call from out of state was held to be a sufficient "minimum contact" with the forum state:

In the principal case, we have no transcript of the hearing and plaintiff's complaint does not allege the number of contacts defendant had with plaintiff's husband here in North Carolina. Therefore, we do not know how many contacts defendant had with plaintiff and her husband in North Carolina. However, we note that federal courts have found personal jurisdiction when the defendant had only minimal contacts with the forum state. *See Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983), and *J.E.M. Corporation v. McClellan*, 462 F.Supp. 1246 (D.Kan. 1978) (exercising personal jurisdiction when defendant's sole contact with the forum state was a single phone call from out-of-state).

The quantity of defendant's contacts with North Carolina may not have been extensive. However, we have already determined that the contacts were sufficient for purposes of N.C. Gen. Stat. § 1-75.4[.]

*Id.*

C.      Content of Communications

Defendant also contends that plaintiff did not present sufficient evidence of the content of the communications between himself and Mary.  Defendant argues that he and Mary "acknowledged they communicated electronically, (R pp 59(¶¶11-14), 84(¶15)), but they also vehemently denied that such communications had any improper purpose or content.  (R pp 59(¶¶11, 13), 84-85(¶¶15-23), 95(¶5)).  Mr. Ponder did not present evidence sufficient to overcome those sworn denials."

Again, for purposes of personal jurisdiction, plaintiff was not required to prove the precise content of the communications between defendant and Mary.  *See generally Cooper*, 140 N.C. App. 729, 537 S.E.2d 854.  Plaintiff is required only to present evidence of the communications and some evidence, which may be circumstantial, that the communications were for the purpose of alienating the affections of his spouse. *See generally id.*  Quite often in cases dealing with alienation of affections, the defendant and the spouse of the plaintiff allege some proper reason for their communications other than encouraging or seeking a romantic relationship or alienation of the affections between the plaintiff and his or her spouse. *See, e.g., Brown*, 363 N.C. at 364, 678 S.E.2d at 224.  For example, in *Brown*, our Supreme Court noted that in the defendant's affidavit, he "never denied that he telephoned or e-mailed plaintiff's spouse in North Carolina; rather, he merely characterized the conversations as work related." *Id.*  Here, defendant also has not denied that he

- 19 -

communicated with Mary by telephone and text, but to the extent that he admits recalling such communications, he claimed he was merely providing information regarding where Mary could seek assistance related to domestic violence.

Other evidence also tends to support plaintiff's claim that the content and purpose of the communications between defendant and Mary was to alienate the affection of the marriage. The evidence before the trial court included defendant's affidavit executed on 1 June 2016, in which he states that "I consider Ms. Ponder a friend and somewhat of a daughter and that is how it has always been." However, on 20 December 2017, defendant testified in a deposition that he and Mary had been dating for "[f]ive years." Defendant filed an Errata Sheet to this deposition, changing his answer from "five years" to "five months." Certainly, defendant may have misspoken -- twice -- by saying "years" instead of "months," but his testimony does raise a credibility issue, particularly in light of the other evidence forecast including defendant's provision of $85,000, plane tickets, and a home for Mary. And if assuming defendant did make a mistake and they had been dating only months, not years, defendant testified in the same deposition that in December 2017, after dating for only five *months*, he and Mary lived together in a house they jointly owned, and he provided for her daily expenses. Defendant's relationship with Mary had progressed since his June 2016 affidavit from "friend" and "somewhat of a daughter" to husband and wife. In Mary's affidavit executed 2 March 2018, she noted she and defendant had gotten married in December of 2017. This Court cannot determine if plaintiff

should ultimately prevail in his claims. But here, while defendant mostly asserts he cannot remember if had communicated with Mary or not, and to what extent, the evidence forecast and presented by plaintiff indicates that he did, and the extent to which that qualifies as a tort is a question for the trial court and/or jury.

D.    Summary

In summary, solicitation does not require initiation, and there was sufficient evidence upon which the trial court made its determination that the long-arm statute was satisfied as to solicitation. I need not determine specifically if the communication arose to the level of a tort for which defendant would be liable as that is not the question before us. I would overrule defendant's arguments.

IV.    Due Process

Finally, defendant contends the trial court erred in exercising jurisdiction over him because "doing so contravenes the North Carolina long-arm statute and the due process clause of the United States Constitution[.]" (Original in all caps.) I have already noted that the trial court had competent evidence for its finding of fact that defendant solicited plaintiff for purposes of the long-arm statute. *See* N.C. Gen. Stat. § 1-75.4 (2013). Thus, the remaining inquiry is one of due process; returning to *Cooper*,

> Since we have determined that personal jurisdiction is authorized by the long-arm statute, we must now address whether defendant had such minimum contacts with the forum state to comport with due process. *Fraser v. Littlejohn*, 96 N.C. App. 377, 386 S.E.2d 230 (1989). Due

process requires that the defendant have "minimum contacts" with the state in order to satisfy "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)). The factors to consider when determining whether defendant's activities are sufficient to establish minimum contacts are: "(1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interests of the forum state, and (5) the convenience to the parties." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999).

*In the principal case, we have no transcript of the hearing and plaintiff's complaint does not allege the number of contacts defendant had with plaintiff's husband here in North Carolina. Therefore, we do not know how many contacts defendant had with plaintiff and her husband in North Carolina. However, we note that federal courts have found personal jurisdiction when the defendant had only minimal contacts with the forum state. See Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir.1982), cert. denied, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983), *and J.E.M. Corporation v. McClellan*, 462 F.Supp. 1246 (D.Kan.1978) (exercising personal jurisdiction when defendant's sole contact with the forum state was a single phone call from out-of-state).

The quantity of defendant's contacts with North Carolina may not have been extensive. However, we have already determined that the contacts were sufficient for purposes of N.C. Gen. Stat. § 1–75.4, *especially considering that the alleged injury under the claim (ultimately the destruction of plaintiff's marriage) was suffered by plaintiff allegedly within this state.* Plaintiff claims that there is a direct relationship between the contacts and plaintiff's injuries. Furthermore:

> North Carolina has a strong interest in protecting its citizens from local injury caused by the tortious conduct of foreign citizens:

> "In light of the powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors, the court has more readily found assertions of jurisdiction constitutional in tort cases."

*Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) (quoting *Ciba–Geigy Corp. v. Barnett*, 76 N.C. App. 605, 608, 334 S.E.2d 91, 93 (1985)). It is important to note that plaintiff cannot bring the claims for alienation of affections and criminal conversation in South Carolina (defendant's resident state) since that state has abolished those causes of actions. *Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 750 (1992). Therefore, North Carolina's interest in providing a forum for plaintiff's cause of action is especially great in light of the circumstances. Furthermore, North Carolina's legislature and courts have repeatedly demonstrated the importance of protecting marriage. N.C. Gen. Stat. § 8–57(c) (spouses may not be compelled to testify against each other if confidential information made by one to the other would be disclosed)[.]

Finally, we must consider the convenience to the parties. As mentioned earlier, plaintiff would be unable to bring her claims in South Carolina (defendant's resident state) since those causes of action are no longer in existence in South Carolina. Furthermore, several possible witnesses and evidence relevant to plaintiff's marriage and the destruction thereof would more than likely be located in North Carolina. In addition, because defendant is a resident of our neighboring state, South Carolina, there is a minimal traveling burden on defendant to defend the claims in North Carolina. For the reasons stated above, we do not believe that allowing plaintiff to bring these claims against defendant in North Carolina in any way "offend[s] 'traditional notions of fair play and substantial justice.'" *International Shoe Co.*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283).

140 N.C. App. at 734–36, 537 S.E.2d at 857–58 (emphasis added) (alterations in original) (citations omitted).

Here, phone records indicate there were more than 400 communications between defendant and Mary. While we do not know the exact nature of these contacts, plaintiff's verified complaint notes defendant provided Mary with airplane tickets and a home in Florida to live in upon leaving North Carolina. Just as in *Cooper*, [p]laintiff claims that there is a direct relationship between the contacts and plaintiff's injuries[;]" namely, "the destruction of plaintiff's marriage[.]" *Id.* at 735, 537 S.E.2d at 858. Also, as in *Cooper, id.*, North Carolina's interest in providing a forum to protect marriage law is high, particularly as alienation of affections is no longer a claim under Florida law. *Davis v. Hilton,* 780 So. 2d 974, 975 (Fla. Dist. Ct. App. 2001) ("The clear language of Florida Statutes § 771.01 abolishes the claim of alienation of affections."). As to the convenience of the parties, plaintiff would be unable to bring his claim in Florida. *See id.*; *see also Cooper*, 140 N.C. App. 735-36, 537 S.E.2d at 858. "Furthermore, several possible witnesses and evidence relevant to plaintiff's marriage and the destruction thereof would more than likely be located in North Carolina." *Id.* at 736, 537 S.E.2d at 858. Ultimately, just as in *Cooper*, I "do not believe that allowing plaintiff to bring these claims against defendant in North Carolina in any way offends traditional notions of fair play and substantial justice." *Id.* (citation, quotation marks, and brackets omitted). Summarizing, just as the trial

- 24 -

court determined based on the competent evidence before it, due process standards have been met.  I would overrule this argument.

In conclusion, I would affirm the order of the trial, and therefore I respectfully dissent.